Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

Jacob U. Ginsburg (*pro hac vice* pending)
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.
30 East Butler Avenue
Ambler, Pennsylvania 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817

*Attorneys for Plaintiff Claudia Reed, individually, and on behalf of all others similarly situated*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| CLAUDIA REED, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MY REALTY EDGE CORP. d/b/a HUD HOMES USA, and DOES 1-10, inclusive,<br><br>Defendants. | **TELEPHONE CONSUMER PROTECTION ACT COMPLAINT and JURY DEMAND**<br><br>**CLASS ACTION**<br><br>No. 25-5679 |

Plaintiff, Claudia Reed ("Reed" or "Plaintiff") individually and on behalf of all others similarly situated, files this Class-Action Complaint against Defendant My Realty Edge Corp. d/b/a HUD Homes USA ("MRE"). In support thereof, Plaintiff states as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendant. Defendant violated Plaintiff and the putative class-members' rights by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry, and by making solicitation calls using an automated telephone dialing system without their prior express consent. Those acts and omissions, which

are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and the TCPA's corresponding regulations promulgated by the Federal Communications Commission ("FCC") at 47 C.F.R. § 64.1200 *et seq*.

## BACKGROUND ON THE TCPA

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. See 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3)

8. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, but by 2019, it had collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**PARTIES**

11. Plaintiff Claudia Reed is an individual who resides in Citronelle, Alabama.

12. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

13. Defendant My Realty Edge Corp. ("MRE") is a Delaware corporation which registered 1999 South Bascom Avenue, Suite 700, Campbell, California 95008 as its principal address with the California Secretary of State. MRE describes itself as a "real estate listing service."

14. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiffs are

informed and believe, and based thereon allege, that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

15. Plaintiffs are informed and believe, and based thereon allege, that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual employees, agents, ostensible agents, conspirators, partners, alter egos, joint venturers, joint entrepreneurs, and co-conspirators of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, joint enterprise, and/or conspiracy, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

16. All Defendants, including MRE and Does 1 through 10, are collectively referred to as "Defendants." Whenever this complaint refers to any act of Defendants or acts of MRE, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

## JURISDICTION AND VENUE

17. **Jurisdiction:** This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

18. This Court has personal jurisdiction over Defendants which reside, are headquartered and incorporated, and licensed to conduct business, in the State of California.

19. MRE maintains its headquarters within this District in the State of California, in the County of Santa Clara.

20. **Venue:** Accordingly, personal jurisdiction exists, and venue is proper under 28 U.S.C. § 1391(b)(1).

21. **Divisional Assignment:** This case should be assigned to the Court's San Jose division because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the County of Santa Clara.

**PARTIES**

22. Plaintiff Claudia Reed is an individual who resides in Citronelle, Alabama.

23. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

24. Defendant My Realty Edge Corp. ("MRE") is a Delaware corporation which registered 1999 South Bascom Avenue, Suite 700, Campbell, California 95008 as its principal address with the California Secretary of State. MRE describes itself as a "real estate listing service."

25. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

26. Plaintiffs are informed and believe, and based thereon allege, that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

27. All Defendants, including MRE and Does 1 through 10, are collectively referred to as "Defendants." Whenever this complaint refers to any act of Defendants or acts of MRE, the

allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

## FACTUAL ALLEGATIONS

28. At all times relevant hereto, Plaintiff, Claudia Reed, owned a cell phone, the number for which was (251) XXX-2241.

29. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on February 21, 2017 in order to obtain solitude from invasive and irritating telemarketing calls and texts.

30. At all times relevant hereto, Reed used her cell phone primarily for personal and residential purposes, such as speaking with friends and family.

31. Beginning in April 2024, Defendant sent Plaintiff at least eight (8) unsolicited and unconsented text messages, soliciting foreclosed homes for sale in Murray Hill, Florida. A true and correct copy of those text messages are attached as Exhibit "A."

32. The text messages made statements such as "Check out our top Murray Hill foreclosures before they're gone!" (*See* Ex. A.)

33. A non-exhaustive list of the offending calls from Defendant, of which Reed is currently aware, is listed below:

| **Date:** | **Caller ID:** |
|---|---|
| April 16, 2024 | 24398 |
| April 18, 2024 | 24398 |
| April 23, 2024 | 24398 |
| April 25, 2024 | 24398 |
| April 30, 2024 | 24398 |
| December 28, 2024 | 24398 |
| December 30, 2024 | 24398 |

34. These calls were not made for "emergency purposes," but rather for solicitation purposes.

35. Reed did not have any pre-existing business relationship with Defendants, and

was not interested in purchasing real estate.

36. Reed did not provide Defendants with her prior express consent to be contacted for solicitation purposes.

37. As a result of the foregoing, Reed experienced frustration, annoyance, irritation and a sense that her privacy had been invaded by Defendants.

38. The foregoing acts and omissions by Defendants were in violation of the TCPA and its corresponding regulations.

**DIRECT AND VICARIOUS LIABILITY**

39. Without the benefit of discovery, and because MRE disclosed its identity in the telemarketing calls at issue, Plaintiff assumes MRE directly placed the calls at issue.

40. However, if some or all of the calls were made by third-party/parties on behalf of Defendants, in the alternative, Defendants are vicariously liable for those calls.

41. On May 9, 2013, the FCC determined that telemarketers like Defendant cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC*, 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

42. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

43. The evidence of circumstances pointing to apparent authority on behalf of the

telemarketer “should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller’s authorized agent.” *Id.* at 6593.

44. If Defendant directly placed the calls at issue to Reed and the putative class members, Defendant is directly liable for the placing of those calls.

45. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

46. If Defendant did not directly place the calls to Grant and the putative class members, Defendant’s third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

47. Likewise, on information and belief, Defendant also ratified its agents’ violations of the TCPA by accepting proceeds from sales imitated by unlawful telemarketing communications.

48. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

49. Defendant acted as a principal to telemarketing agent(s) who were acting on their behalf.

50. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents’ TCPA violations.

51. For the count identified below, if Defendant directly placed the calls at issue, they are directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant’s behalf, Defendant is vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

52. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

53. Plaintiff seeks to represent the following class:

> National Do-Not-Call Registry (NDNC) Class: All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period, while such number was registered with the National Do-Not-Call Registry for over thirty days, which were placed by or on behalf of Defendant, from four years prior to the date of this complaint through the date the Court certifies the class.

Excluded from the NDNC Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

54. The putative class members' identities are readily ascertainable from Defendants' records or records within Defendants' control.

55. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

56. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor class counsel have any interests which might cause them not to vigorously pursue this action.

57. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

58. Class Members are so numerous that the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

59. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

(a) Whether Defendants scrub or otherwise complies with the federal Do Not Call registry before calling numbers;

(b) Whether the text messages are "solicitations" as defined by 47 U.S.C. § 227(a)(4);

(c) Whether Defendants' conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA; and

(d) Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

60. Plaintiff and the putative class members have claims arising out of Defendant's uniform course of conduct, namely improperly placing solicitation calls to Plaintiff and the putative class members.

61. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

62. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

63. Based on information and belief, Defendant continues to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

64. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

65. Plaintiff brings this Count individually and on behalf of all others similarly situated.

66. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii), (e).

67. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

68. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls and texts to phone numbers registered on the National Do Not Call Registry. See 47 U.S.C. § 227(c)(5)(A).

69. By calling and texting Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry, Defendant violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

70. On information and belief, Defendant and/or its agents routinely make outgoing calls or send texts to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendant violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other NDNC Class members. Defendant violated 47 C.F.R. §

64.1200(c).

71. Defendant's violations are knowing and willful because Defendant knew or should have known that Plaintiff and NDNC Class members had their numbers registered on the Do Not Call Registry.

72. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

73. Plaintiff and NDNC Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendant and up to $1,500.00 per violation if the Court finds Defendant willfully violated the TCPA.

74. Plaintiff, individually, and on behalf of the other NDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendant to stop their violations of the TCPA.

75. Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the NDNC Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

76. WHEREFORE, Plaintiff, Claudia Reed, individually, and/or behalf of all other similarly situated, requests the Court grant the following relief against Defendants, as follows:

a. Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

b. Enter an order appointing Preston Law Offices and Kimmel & Silverman, P.C. as class counsel;

c. Enter judgment in favor of Plaintiff and the NDNC Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(c) consistent with proof at trial;

d. Enter a judgment in favor of Plaintiff and the NDNC Class that enjoins Defendant from violating the TCPA's regulations in the manner and/or using the means as alleged above and consistent with proof;

e. Award Plaintiff and the NDNC Class all expenses of this action, attorneys' fees and costs under California Code of Civil Procedure § 1021.5 in favor of Plaintiff and the NDNC Class, and require Defendant to pay the costs and expenses of class notice and administration; and,

f. Award Plaintiff and the NDNC Class such further and other relief the Court deems just and appropriate.

Dated: July 7, 2025

By: /s/Ethan Preston

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

Jacob U. Ginsburg (*pro hac vice* pending)
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.
30 East Butler Avenue
Ambler, Pennsylvania 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817

*Attorneys for Plaintiff Claudia Reed, individually, and on behalf of all others similarly situated*

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 7, 2025

By: /s/Ethan Preston

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

Jacob U. Ginsburg (*pro hac vice* pending)
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.
30 East Butler Avenue
Ambler, Pennsylvania 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817

*Attorneys for Plaintiff Claudia Reed, individually, and on behalf of all others similarly situated*

# Exhibit 1


AT&T
7:39 PM
83
24398
Text Message
Tue, Apr 16 at 10:16 AM
Check out our top Murray Hill foreclosures before they're gone! https://fcl.ac/E3JRRo?A=FCLAL03&T=661E95F4 Reply STOP to unsubscribe: HUDHomesUSA
Thu, Apr 18 at 11:19 AM
Check out our top Murray Hill foreclosures before they're gone! https://fcl.ac/E3JRRo?A=FCLAL03&T=662147F4 Reply STOP to unsubscribe: HUDHomesUSA
Tue, Apr 23 at 3:19 PM
Check out our top Murray Hill foreclosures before they're gone! https://fcl.ac/E3JRRo?A=FCLAL03&T=662817B4 Reply STOP to unsubscribe: HUDHomesUSA
Text Message

AT&T 7:40 PM

83

24398

Thu, Apr 25 at 2:23 PM

Check out our top Murray Hill foreclosures before they're gone! https://fcl.ac/E3JRRo?A=FCLAL03&T=662AAD94 Reply STOP to unsubscribe: HUDHomesUSA

Tue, Apr 30 at 2:33 PM

Check out our top Murray Hill foreclosures before they're gone! https://fcl.ac/E3JRRo?A=FCLAL03&T=663142F8 Reply STOP to unsubscribe: HUDHomesUSA

Sat, Dec 28 at 6:22 PM

Home prices near 32254 are changing daily. Check them out: https://fcl.ac/S7OQTaE0u?A=FCLTR12&T=67709628&subid4=67709628 Reply STOP to unsubscribe

Text Message


AT&T
7:40 PM
83
24398
Reply STOP to unsubscribe: HUDHomesUSA
Sat, Dec 28 at 6:22 PM
Home prices near 32254 are changing daily. Check them out: https://fcl.ac/S7OQTaE0u?A=FCLTR12&T=67709628&subid4=67709628
Reply STOP to unsubscribe
Mon, Dec 30 at 5:41 PM
Murray Hill Alert: these available homes are popular! View listings: https://fcl.ac/S7OQTaE0u?A=FCLAL12&T=67732F8C&subid4=67732F8C
Reply STOP to unsubscribe
STOP
You have opted-out and will receive no further messages from Account Alerts.
Text Message